UNITED STATES DISTRICT COURT
EASTERN DISTRICT: STATE OF NEW YORK
----------------------------------------------------------X

ROSINA CIERVO and CELENA McDANIEL,

               Plaintiffs,

      -against-

THE COUNTY OF SUFFOLK, THE SUFFOLK
COUNTY TRAFFIC AND PARKING
VIOLATIONS AGENCY, ALLEN S.
MATHERS, and JOHN DOES 1-10,

             Defendants.
----------------------------------------------------------X

Civil Action No.:

COMPLAINT

JURY TRIAL DEMANDED

<u>PRELIMINARY STATEMENT</u>

1. The Plaintiffs in this lawsuit are indigent residents of the County of Suffolk who have suffered indefinite suspension of their motor vehicle registrations for failure to pay court costs and fines that they could not afford.

2. The County of Suffolk relies upon the suspension of motor vehicle registrations to coerce payment of money owed to the Suffolk County Traffic and Parking Violations Agency.

3. Persons who can afford to pay these fines and fees, generally make these payments.

1

4. For those who cannot pay, suspension of their motor vehicle registrations occurs without inquiry into the reasons for nonpayment, or consideration of the debtor's financial circumstances.

5. The Suffolk County Traffic and Parking Violations Agency refuses to even permit any hearing on indigency to determine the financial circumstances of the individuals who are charged with these fines.

6. The Plaintiffs, bring this action to address and remedy the systemic, pervasive, and ongoing failure of the County to provide basic protections afforded by the Due Process and Equal Protection Clauses of the United States Constitution before taking the harsh enforcement measure of suspending motor vehicle registrations against indigent people whose poverty prevents them from paying debts owed to the Agency.

7. The Plaintiffs seek relief from the County's unconstitutional scheme that unfairly punishes them for being poor. In addition to damages, both compensatory and punitive, Plaintiffs seek affirmative and equitable relief, an award of costs and attorneys fees, and such other and further relief as this court deems equitable and proper.

## JURISDICTION AND VENUE

8. The Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

9. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, because this action arises under the Constitution and laws of the United States, and pursuant to 28 U.S.C. §

1343(a)(3), because it seeks to redress the deprivation, under color of State law, of rights, privileges, and immunities secured to the named Plaintiffs by the Constitution and laws of the United States.

## VENUE

10. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the named Plaintiffs' claims occurred in this judicial district, or a substantial part of the property that is the subject of this action (namely, Plaintiffs' motor vehicles) is situated in this judicial district.

## PARTIES

11. Plaintiff, Rosina Ciervo, is a sixty-two year old woman who lives in the County of Suffolk, in the State of New York.

12. Ms. Ciervo is indigent within the meaning of New York State County Law Article 18-b, subsisting upon her monthly SSI payments, and who resides in rent subsidized housing.

13. Plaintiff Celena McDaniel is a thirty-nine year old woman who lives in the County of Suffolk, in the State of New York.

14. Ms. McDaniel is indigent within the meaning of New York State County Law Article 18-b, subsisting upon her monthly SSI payments while caring for her disabled child.

3

15. Defendant, the County of Suffolk, is a municipal corporation duly organized, existing, operated and conducted under and by virtue of the laws of the State of New York.

16. The Suffolk County Traffic and Parking Violations Agency is a part of the local governmental unit of Suffolk County, duly organized, existing, operated and conducted under and by virtue of the laws of the State of New York.

17. That Defendant, Allen S. Mathers, is a judicial hearing officer employed by the County of Suffolk at the Suffolk County Traffic and Parking Violations Agency.

18. That Mr. Mathers is sued in his official capacity as a judicial hearing officer employed by the Suffolk County Traffic and Parking Violations Agency.

19. That Mr. Mathers was the individual responsible for recommending that the motor vehicle registrations of the above named plaintiffs be suspended.

20. That upon information and belief, at all times herein mentioned, the Defendants, John Does 1-10, are individuals whose names are currently unknown to the Plaintiff, and who were employees, agents and/or servants of the Defendants, the Suffolk County Traffic and Parking Violations Agency, and the County of Suffolk. The Defendants, John Does 1-10, are being sued as more fully described herein.

21. At all times relevant to the events, acts, and/or omissions alleged in this Complaint, Mr. Mathers and any "John Does" have acted under color of State law,

pursuant to their authority and responsibility as an employee of the County of Suffolk and/or the Suffolk County Traffic and Parking Violations Agency.

FACTS

22. That the Suffolk County Traffic and Parking Violations Agency is a department of the Suffolk County Government which operates under the direction and control of the county executive pursuant to Section 370(3) of the New York General Municipal Law.

23. That under Section 371(2) of the New York General Municipal Law, the Suffolk County Traffic and Parking Violations Agency has jurisdiction over certain enumerated parking violations and traffic infractions, including violations of Section 1111-b of the New York State Vehicle and Traffic Law ("red light camera infractions").

24. That the red light camera system is a video monitoring system authorized by the State of New York pursuant to Section 1111-b of the New York State Vehicle and Traffic Law for certain designated intersections which imposes liability upon the owner of a motor vehicle when that vehicle has violated Section 1111(d) of the New York State Vehicle and Traffic Law.

25. A red light camera infraction is not a criminal offense and imposes only a civil penalty upon the owner of the vehicle.

26. The law provides that "[t]he liability of the owner pursuant to this section shall not exceed fifty dollars for each violation; provided, however, that such local law

5

or ordinance may provide for an additional penalty not in excess of twenty-five dollars for each violation for the failure to respond to a notice of liability within the prescribed time period", N.Y. Vehicle and Traffic Law 1111-b

27. That in addition to the foregoing, the County of Suffolk has imposed an "administrative fee" of thirty dollars for each red light camera violation, Suffolk County Code, §818-78(A)(1).

28. That the "administrative fee" is not imposed upon individuals who are adjudicated not liable of a violation under Section 1111-b of the Vehicle and Traffic Law.

29. In addition to these and other costs, the County and the Agency enter civil judgments against individuals convicted of red light camera infractions, which judgments continue to accrue interest at the statutory rate of interest.

30. The County and the Agency also impose an "[a]dministrative fee for judgment", in the amount of one hundred dollars, Suffolk County Code, §818-78(A)(4).

31. That the County, as a governmental entity is exempt from any filing fees under New York law for the filing of a judgment.

32. The County and the Agency also impose an "[a]dministrative fee for default", in the amount of fifty dollars, Suffolk County Code, §818-78(A)(5).

33. The County and the Agency also impose an "[f]ee for failing to timely pay [a] fine", in the amount of fifty dollars, Suffolk County Code, §818-78(A)(6).

34. Needless to say, these fines, fees,, penalties, costs, and interest on judgments

add up rapidly, exposing an individual to increasing debt for these civil offenses.

35. The ability to drive and operate a motor vehicle on Long Island is essential for people and often results in hardship for individuals and their families, including the ability to perform routine chores, and to get to medical appointments for both themselves and family members.

36. Research has consistently found that having the ability to operate a motor vehicle can be crucial to an individual's ability to maintain a job, pursue educational opportunities, and care for oneself and one's family. See "Letter to Colleague" from Vanita Gupta and Lisa Foster, U.S. Department of Justice (Mar. 14, 2016), available at https://www.courts.wa.gov/subsite/mjc/docs/DOJDearColleague.pdf.

37. That Section 510(d)(3) of the New York State Vehicle and Traffic Law provides for the suspension of motor vehicle registrations for habitual or persistent violation of any of the provisions of this chapter, or of any lawful ordinance, rule or regulation made by local authorities in relation to traffic.

38. The Traffic and Parking Violations Agency has a policy in place and routinely suspends motor vehicle registrations for nonpayment of red light camera fines.

39. Suspended registrations can trap the poor in an impossible situation, resulting in an inability to reinstate their registrations without gainful employment, an inability to work and an increased threat of criminal prosecution since driving with a

suspended license is a misdemeanor criminal offense under New York law, potentially resulting in more fines and penalties.

40. Paying off court debt is particularly hard for individuals living below the federal poverty threshold and subsisting on SSI.

41. Suspending registrations as a means of debt collection also puts public safety at risk, because law enforcement resources are devoted to stopping, investigating, and prosecuting suspended drivers who do not present a danger behind the wheel instead of pursuing individuals who do present a danger behind the wheel.

**The Named Plaintiffs' Debts**

42. Both of the named Plaintiffs is currently suffering under the indefinite suspension of their motor vehicle registrations for failure to pay money owed to the Suffolk County Traffic and Parking Violations Agency.

43. The Plaintiffs' registrations were referred to the Department of Motor Vehicles without any hearing or inquiry into their individual financial circumstances, or the reasons underlying their failure to pay.

44. The Defendants will not reinstate the Plaintiffs' registrations until they satisfy their court debt entirely, or obtain payment plans from each court to which they are indebted.

45. The Plaintiffs are not able to enter into or maintain payment plans with each court in which they owe because they cannot afford the one-size-fits-all terms that do not take into account their individual financial circumstances.

46. The Plaintiffs were not offered community service, or any other alternatives that would enable them to reinstate their registrations.

47. The Plaintiffs would pay their debts and reinstate their registrations if they could afford to do so, but have been unable to acquire the resources to pay and have suffered considerable hardship as a result.

48. The Plaintiffs' debts continue to increase daily, as interest accrues at an annual rate of 9%.

**Rosina Ciervo**

49. Rosina Ciervo, is a sixty-two year old woman who lives in the County of Suffolk.

50. Ms. Ciervo is indigent within the meaning of New York State County Law Article 18-b, subsisting upon her monthly SSI payments, and who resides in rent subsidized housing.

51. Ms. Ciervo also receives food stamps to assist her in meeting her basic needs.

52. Ms. Ciervo receives Medicaid in order to meet her medical costs.

53. Ms. Ciervo's disabilities render her unable to work and she will remain unable to work for the foreseeable future.

9

54. That Plaintiff Rosina Ciervo received a "Notice of Hearing from the Suffolk County Traffic and Parking Violations Agency, stating that a hearing was "for a suspension/revocation hearing".

55. That the hearing was based upon allegations that Ms. Ciervo had 25 outstanding red light camera citations with fines totaling $3,165.00.

56. Ms. Ciervo was not even aware of the red light camera infractions as they had been incurred by individuals in her family and not by her.

57. That the hearing notice stated that "[t]he hearing will determine if the motorist's registration should be suspended or revoked".

58. That the hearing notice also states that the motorist "should be prepared to present all evidence and witnesses on your behalf at the hearing".

59. That on May 1, 2019, Ms. Ciervo appeared with counsel and requested that an indigency hearing be held pursuant to the Fourteenth Amendment of the United States Constitution and *Bearden v. Georgia*, 461 U.S. 660 (1983), which prohibit punishing an individual for her indigency without a hearing.

60. That the hearing officer employed by the Suffolk County Traffic and Parking Violations Agency on that date was Defendant, Allen S. Mathers ("hearing officer").

61. That Ms. Ciervo was prepared to proceed on that date with a hearing on the issue of her indigency.

62. That the hearing officer refused to entertain the application for an indigency

hearing and stated that he was recommending to the New York State Department of Motor Vehicles that any motor vehicle in Ms. Ciervo's name be suspended.

63. That this suspension applied to any motor vehicles in Ms. Ciervo's name and not just motor vehicles which had been adjudicated liable of a red light camera infraction.

64. The Department of Motor Vehicles has suspended Ms. Ciervo's motor vehicle registrations as of May 7, 2019.

65. That based upon her inability to work, Ms. Ciervo has no hope of ever paying her debt to the Agency, with the result that she will never be able to register a motor vehicle in the State of New York in perpetuity.

**Celena McDaniel**

66. Plaintiff Celena McDaniel is a thirty-nine year old mother of three who lives in the County of Suffolk, in the State of New York.

67. Ms. McDaniel is indigent within the meaning of New York State County Law Article 18-b, subsisting upon her monthly SSI payments while caring for her disabled child.

68. Ms. McDaniel lives in rent subsidized housing with her three children.

69. Ms. McDaniel also receives food stamps to assist her in meeting her basic needs.

70. Ms. McDaniel receives Medicaid in order to meet her medical costs.

71. Ms. McDaniel is forced to care for her disabled son rendering her unable to work and she will remain unable to work for the foreseeable future.

72. That Plaintiff Celean McDaniel received a "Notice of Hearing from the Suffolk County Traffic and Parking Violations Agency, stating that a hearing was "for a suspension/revocation hearing".

73. That the hearing was based upon allegations that Ms. McDaniel had 43 outstanding red light camera citations with fines totaling $4,585.00.

74. Ms. McDaniel was not even aware of the red light camera infractions as they had been incurred by individuals in her family and not by her.

75. That the hearing notice stated that "[t]he hearing will determine if the motorist's registration should be suspended or revoked".

76. That the hearing notice also states that the motorist "should be prepared to present all evidence and witnesses on your behalf at the hearing".

77. That on May 1, 2019, Ms. McDaniel appeared with counsel and requested that an indigency hearing be held pursuant to the Fourteenth Amendment of the United States Constitution and *Bearden v. Georgia*, 461 U.S. 660 (1983), which prohibit punishing an individual for her indigency without a hearing.

78. That the hearing officer employed by the Suffolk County Traffic and Parking Violations Agency on that date was Defendant, Allen S. Mathers ("hearing officer").

79. That Ms. McDaniel was prepared to proceed on that date with a hearing on

the issue of her indigency.

80. That the hearing officer refused to entertain the application for an indigency hearing and stated that he was recommending to the New York State Department of Motor Vehicles that any motor vehicle in Ms. McDaniel's name be suspended.

81. That this suspension applied to any motor vehicles in Ms. McDaniel's name and not just motor vehicles which had been adjudicated liable of a red light camera infraction.

82. The Department of Motor Vehicles has suspended Ms. McDaniel's motor vehicle registrations.

83. That based upon her inability to work, Ms. McDaniel has no hope of ever paying her debt to the Agency, with the result that she will never be able to register a motor vehicle in the State of New York in perpetuity.

**THE REGISTRATION SUSPENSIONS**

84. New York State provides for a mechanism to suspend a motor vehicle registration under the New York State Vehicle and Traffic Law, which provides that "[a]ny magistrate, justice or judge, in a city, in a town, or in a village, any supreme court justice, any county judge, any judge of a district court, the superintendent of state police and the commissioner of motor vehicles or any person deputized by him, shall have power to revoke or suspend the license to drive a motor vehicle or motorcycle of any person, or in the case of an owner, the registration, as provided herein", New York State

Vehicle and Traffic Law §510(1).

85. The law further provides that "[s]uch licenses and registrations and the privilege of a non-resident of operating a motor vehicle in this state and of operation within this state of any motor vehicle owned by him and the privilege of an unlicensed person of obtaining a license issued by the commissioner and of obtaining a registration issued by the commissioner may be suspended or revoked for habitual or persistent violation of any of the provisions of this chapter, or of any lawful ordinance, rule or regulation made by local authorities in relation to traffic", New York State Vehicle and Traffic Law §510(3).

90. The law further provides that ''[w]here revocation or suspension is permissive, the holder, unless he shall waive such right, shall have an opportunity to be heard except where such revocation or suspension is based solely on a court conviction or convictions or on a court commitment to an institution under the jurisdiction of the department of mental hygiene", New York State Vehicle and Traffic Law §510(3-a).

91. The suspensions to both Ms. Ciervo and Ms. McDaniel were "permissive" suspensions within the meaning of New York Law.

92. The Agency served a "Notice of Hearing" on both Ms. Ciervo and Ms. McDaniel relating to their matters.

93. The Notice stated that "THE MOTORIST MUST APPEAR AT THE HEARING WITH THEIR ATTORNEY, IF ONE HAS BEEN RETAINED. YOU SHOULD BE

PREPARED TO PRESENT ALL EVIDENCE AND WITNESSES ON YOUR BEHALF AT THE HEARING".

94. On May 1, 2019, both Ms. Ciervo and Ms. McDaniel appeared and were prepared to present witnesses and evidence regarding their indigency at the hearing.

95. That the judicial hearing officer presiding over the hearing was Allen S. Mathers.

96. That Mr. Mathers refused to hear the application and stated that he was asking the Department of Motor Vehicles to suspend the registrations for both Ms. McDaniel and Ms. Ciervo.

97. That information sent in the Notice of Hearing was misleading and incorrect since no hearing was held and neither Ms. Ciervo nor Ms. McDaniel were permitted to produce any evidence or call any witnesses.

98. That the only purpose of the hearing is for the prosecutor to attempt to obtain payment for the outstanding fines.

99. If the individual is unable to pay the outstanding fines in an manner acceptable to the prosecution, the registration will be suspended.

100. The Notice of Hearing is both misleading and incomplete.

101. The Notice of Hearing does not advise an individual of the right to have indigency or the reasons for nonpayment considered in determining whether or not his or her registration should be suspended for nonpayment.

15

102. The hearing officer does not conduct a review of a person's financial condition prior to—or indeed at any point related to—suspending a person's registration for failure to pay, or otherwise inquire as to the reasons for the default in paying.

103. The hearing officer is not authorized by the Agency to conduct any fact-finding into the financial ability of an individual to pay these outstanding fines.

104. The only authority a hearing officer at the Agency has in these matters is to either approve the payment agreement entered into by the individual with the Agency, or suspend the registration, the hearing officers are prohibited from doing anything further by the Agency.

105. This is the policy at the Agency.

106. In order to have the registrations reinstated by the Agency, an individual is required to enter into a payment agreement acceptable to the Agency.

## CLAIMS FOR RELIEF

### Count I: Violation of Due Process (Fundamental Fairness)

107. The Plaintiffs incorporate the allegations in Paragraphs 1-106 above with the same force and effect as if herein set forth.

108. The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

109. The Due Process Clause prohibits the state from subjecting individuals to processes and penalties that fail to comport with principles of due process and fundamental fairness.

110. The United States Supreme Court has repeatedly held that punishing a person solely for his or her inability to pay, rather than willful refusal to pay or make bona fide efforts to acquire the resources to pay, violates principles of due process and fundamental fairness.

111. The County and the Agency's debt payment system automatically and mandatorily requires all convicted red light camera offenders to pay the fines, costs, penalties and interest without regard to their individual financial circumstances.

112. The polices put in place by the Agency also automatically and mandatorily require the hearing officers to transmit to the New York State Department of Motor Vehicles a motor vehicle registration suspension notice based upon the "hearing" for any fines or costs owed to the Agency, without inquiry into the reasons for nonpayment, or consideration of whether the requirement to repay will exact manifest hardship on that person or the person's family.

113. The suspension of the registration or registrations is then entered by the New York State Department of Motor Vehicles for any person whose failure to comply is owing to his or her inability to pay court costs and fines, rather than a willful refusal to pay.

17

114. In this regard, the Defendants' registration-for-payment scheme inevitably results in individuals being punished for their inability to pay.

115. Punishing an individual solely for his or her inability to pay violates principles of due process and fundamental fairness.

116. Accordingly, the Defendants' registration-for-payment system violates the Due Process Clause of the U.S. Constitution.

**Count II: Violation of Procedural Due Process (Lack of Ability-to-Pay Hearing)**

117. The Plaintiffs incorporate the allegations in Paragraphs 1-???? above with the same force and effect as if herein set forth.

118. A person's ability to lawfully register a motor vehicle and its attendant government-sanctioned ability to drive is widely recognized as a property interest that may not be taken away without due process of law.

119. Due process requires the Agency to conduct ability-to-pay inquiries at each stage in a case, including the point at which it proposes to take coercive action to punish nonpayment.

120. As described above, the Agency's registration-for-payment system automatically and mandatorily imposes costs without consideration of ability to pay, and automatically and mandatorily requires the New York State Department of Motor Vehicles to suspend a person's motor vehicle registration(s) upon receipt from the Agency of a report from a judicial hearing officer without taking ability to pay into

account.

121. It is common for a person's financial circumstances to fluctuate throughout his or her lifetime, and a person who is not indigent at the time of trial may become indigent prior to satisfying all financial obligations to various courts.

122. Prior to executing an order suspending a debtor's driver's license, the Defendants provide no notice, oral or written, to the debtor of his or her right to an ability-to-pay determination evaluating his or her present financial condition, and indeed, flatly refuse to allow an individual to present any evidence or witnesses as part of such a hearing.

123. Moreover, the Defendants conduct no independent review of the debtor's ability to pay and the debtor's present financial condition, prior to—or indeed, after—taking the harsh enforcement action of suspending the debtor's motor vehicle registration(s).

124. The purpose of the Defendants registration-for-payment system is to coerce payment, and not to protect public safety on the roads; therefore, Plaintiffs are entitled to predeprivation notice and a hearing prior to a registration suspension.

125. In the absence of notice and hearing, which do not presently exist under the policies put in place by the County and the Agency in relation to the suspension of motor vehicle registrations for unpaid court debt, the risk is very high that an indigent debtor will be deprived of his or her motor vehicle registration for reasons attributable

to his or her poverty.

126. The high risk of deprivation created by the Defendants' automatic, one-size-fits-all registration suspension system violates the Due Process Clause of the United States Constitution.

### Count III: Violation of Equal Protection Clause (Equal Justice and Punishing Poverty)

127. The Plaintiffs incorporate the allegations in Paragraphs 1-126 above with the same force and effect as if herein set forth.

128. The United States Supreme Court has repeatedly endorsed the principle that punishing a person solely for his or her poverty, rather than willful refusal to pay or to make bona fide efforts to acquire the resources to pay, violates principles of fundamental fairness embedded in the Fifth and Fourteenth Amendments of the United States Constitution.

129. The recoupment methods set in place by the Defendants, notwithstanding any interests they may serve, may not blight the hopes of indigent people for self-sufficiency and self-respect.

130. Acting through Defendant Mathers, the Defendants' registration-for-payment scheme automatically and mandatorily (without consideration of financial circumstances, or any alternatives) suspends the motor vehicle registrations of indigent persons whose failure to comply is owing to their inability to pay court costs, fines, interest and penalties rather than a willful refusal to pay.

131. The resulting cascade of hardship—job loss, mounting interest, convictions for driving with suspended motor vehicle registration, additional costs and fines, and even jail time—keeps low-income people in a perpetual state of disadvantage, a state that people with means can avoid simply by paying in full.

132. In this way, the Defendants take coercive action against people whose poverty makes it impossible for them to comply.

133. The fundamental principle of "equal justice" requires governmental actors and entities to consider the differential impact of harsh enforcement action on people who are impoverished.

134. The scheme enacted by the County and the Agency inevitably results in enforcing financial obligations on people who lack the foreseeable ability to meet them.

135. Indeed, the modern version of the Defendants' registrations-for-payment system was enacted with full knowledge that many individuals are too poor to pay their debts to the Agency.

136. Accordingly, the Defendants' registrations-for-payment system violates the Equal Protection Clause of the U.S. Constitution.

**Count IV: Violation of Due Process Clause (No Rational Basis)**

137. The Plaintiffs incorporate the allegations in Paragraphs 1-??? above with the same force and effect as if herein set forth.

138. The Due Process Clause protects against arbitrary and capricious

21

government action even when the decision to take action follows adequate procedures.

139. A person has protected property and liberty interests in a motor vehicle registration and its attendant government-sanctioned ability to lawfully operate that motor vehicle upon the public roadways.

140. The Defendants' registrations-for-payment scheme is not rationally related to any legitimate governmental objective because suspending driver's motor vehicle registration for nonpayment of court debt makes highways less safe, and is counterproductive as applied to people who need to operate a motor vehicle to obtain or maintain employment in order to meet their financial obligations to the court.

141. A motor vehicle registration is required to lawfully operate a motor vehicle on the roadways in the State of New York, and is often essential in the pursuit of a livelihood or indeed, to merely function as a member of society, and its suspension threatens important interests of the people who hold them.

142. The purpose of requiring motor vehicle registrations is to promote safety on New York's roads and highways by keeping drivers off the roads who present a danger behind the wheel and by keeping unsafe vehicles off the streets.

143. Suspending registrations for non-safety reasons produces no traffic safety benefit, and distracts law enforcement resources from investigating criminal and traffic violations that present true threats to public safety.

144. For low-income debtors, avoidance of motor vehicle suspension does not

operate as an incentive to pay when they must choose between paying the court and paying rent, buying medications, child care, putting food on the table, and meeting other necessary expenses.

145. Indeed, as to people who lack the ability to pay court debt, suspending a motor vehicle registration is not only not rational, but instead fundamentally irrational and counterproductive; suspension not only fails as an incentive (because such people are unable to avoid suspension), but also makes it less likely – rather that more likely – that they will be able to pay court debt.

146. The loss of a registration often means the loss of reliable transportation, which makes debtors less likely to be able to meet their financial obligations to the court.

147. The Defendants' registrations-for-payment system violates the Due Process Clause of the U.S. Constitution because it causes substantial hardship to low-income drivers and bears no rational relationship to any important or legitimate governmental objective.

**Count V: Violation of the Equal Protection Clause (Extraordinary Collection Efforts)**

148. The Plaintiffs incorporate the allegations in Paragraphs 1-147 above with the same force and effect as if herein set forth.

149. The United States Supreme Court has held that, when governments seek to recoup the costs of prosecution from indigent defendants, they may not take advantage

of their position to utilize unduly harsh methods of debt collection solely because the debt is owed to the government and not to a private creditor.

150. Unlike fines, which are imposed as a penalty for unlawful behavior, or restitution, which is imposed to compensate a victim, court costs assessed to subsidize the court proceedings (in this case, in the form of administrative fees) are no different in character than ordinary private consumer debts incurred for services rendered.

151. When a private creditor seeks to enforce a judgment against a debtor via garnishment or lien, the law provides procedural and substantive protections for poor debtors against being deprived of certain basic necessities and the ability to maintain a livelihood.

152. The private creditor may coerce payment only to the extent permitted by those protections. The Defendants' registrations-for-payment system does not treat indigent defendants, to the extent that they owe court costs, like other judgment debtors.

153. The Defendants' registrations-for-payment system provides for suspension of the debtor's motor vehicle registrations and the possibility of imprisonment.

154. When the Defendants take advantage of its position at the controls of the machinery of government to peremptorily strip debtors of their registrations, it executes a form of coercion not available to private creditors for debts unrelated to driving.

155. When the Defendants take advantage of its position at the controls of the

machinery of government to peremptorily strip debtors of their motor vehicle registrations, it denies court debtors owing court costs the procedural and substantive statutory protections that other debtors may invoke against a private creditor in ordinary debt collection proceedings.

156. Despite knowledge that many individuals are too poor to pay their debts to the court, the Defendants' registrations-for-payment system fails to offer poor debtors even a modicum of the substantive and procedural protections it deems necessary to prevent private creditors from stripping the debtor of the ability to maintain a livelihood and meet his or her basic needs.

157. The Defendants' severe and coercive collection policies and practices constitute invidious discrimination and violate the fundamental principle of equal protection of the laws embedded in the United States Constitution.

Wherefore, the Plaintiffs respectfully request that this Court provide the following relief: a. Issue a judgment declaring that the Defendants' policies, practices, acts, and/or omissions as described herein are unlawful and violate Plaintiffs' rights under the Constitution and laws of the United States; b. Preliminarily and permanently enjoin the Defendants, their subordinates, agents, employees, representatives, and all others acting or purporting to act in concert with them or on their behalf from issuing or processing requests, orders or notices of motor vehicle registration suspensions for unpaid court debt against the Plaintiffs until such time as the Defendants implement a

system that complies with the United States Constitution; c. Preliminarily and

permanently issue an injunction ordering the Defendants to reinstate the Plaintiffs'

motor vehicle registrations (insofar as they are suspended based on unpaid debt at the

Agency) d. Award Plaintiffs their reasonable attorneys' fees and litigation costs

pursuant to 42 U.S.C. § 1988 and other applicable law; and g. Grant all such other and

further relief as this Court may deem necessary and/or appropriate in the interests of

justice.

DATED: June 10, 2019
       Deer Park, New York

                           _____/S/_____
                           Scott Lockwood, Esq.
                           Attorney for Plaintiff
                           375 Commack Road
                           Suite 200
                           Deer Park, NY 11729
                           (631) 242-3369